<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CLAUDETTE LITTLE,<br><br>          Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner<br>of Social Security,<br><br>          Defendant. | Case No.:  2:17-cv-11708 (PAZ)<br><br>**OPINION** |

**APPEARANCES:**

JAMES LANGTON
LANGTON & ALTER, ESQS.
1600 ST. GEORGES AVENUE
PO BOX 1798
RAHWAY, NJ 07065
          On behalf of Plaintiff

STEPHEN M. BALL
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
SIXTH FLOOR
PHILADELPHIA, PA 19123
          On behalf of Defendant

**PAUL A. ZOSS, United States Magistrate Judge.**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act,

as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Claudette Little for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (42 U.S.C. §§ 401,

et seq.).  Plaintiff appeals from the final decision of the Administrative Law Judge ("ALJ") denying

the application; Defendant, the Commissioner of Social Security ("the Commissioner"), opposes Plaintiff's appeal.[1]  After careful consideration of the record, including the ALJ hearing transcripts, the ALJ's decision, and the pleadings and memoranda of the parties, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f).  For the reasons set forth below, the Court affirms the Commissioner's decision that Plaintiff was not disabled.

## I.    PROCEDURAL HISTORY

On November 20, 2013, Plaintiff protectively filed an application for alleging a disability onset date of November 30, 2012.  (R. 208-09.)[2]  On January 14, 2014, the Commissioner determined that Plaintiff was not disabled and denied the application.  (R. 94.)  Plaintiff filed for reconsideration, and on March 26, 2014, the application was again denied.  (R. 103.)  On February 12, 2016, an Administrative Law Judge held a hearing on Plaintiff's application; Plaintiff was represented by counsel at the hearing.  (R. 39-76.)  On February 26, 2016, the ALJ issued a decision denying Plaintiff's application.  (R. 23-38.)  On September 18, 2017, the Appeals Council denied Plaintiff's request for review (R. 1-6), thereby affirming the ALJ's decision as the "final" decision of the Commissioner.  On November 16, 2017, Plaintiff timely filed this appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  ECF No. 1.  On June 26, 2018, Plaintiff consented to have a U.S. Magistrate Judge conduct all further proceedings in the case to disposition pursuant to 28

---

[1] In March 2018, the U.S. Government Accountability Office informed the President of its determination that Nancy Berryhill had exceeded the time limit under the Federal Vacancies Reform Act of 1998 allowing her to serve as the Acting Commissioner of the Social Security Administration without the nomination of a successor.  Accordingly, Ms. Berryhill stepped down as Acting Commissioner and continued to lead the agency from her title of record as Deputy Commissioner for Operations.  In April 2018, Ms. Berry resumed her role as Acting Commissioner.  *Patterson v. Berryhill*, No. 18-cv-193 (DWA), 2018 U.S. Dist. LEXIS 99486 (W.D. Pa. Jun. 14, 2018); *see* 5 U.S.C. § 3346(a)(2).

[2] "R." refers to the continuous pagination of the administrative record on appeal.  ECF No. 6.

U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  ECF No. 10.[3]  The case was reassigned to the undersigned Magistrate Judge on March 28, 2019.  ECF No. 14.

## II.    LEGAL STANDARD

### A.    <u>Standard of Review</u>

In reviewing application for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence.  *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 (JLL), 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential one, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry

---

[3] Defendant has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision.  *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484 (RBK), 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000));

*see K.K.*, 2018 WL 1509091, at *4.  The Court "need[s] from the ALJ not only an expression of

the evidence s/he considered which supports the result, but also some indication of the evidence

which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ

may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which

[s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186

F.3d 422, 429 (3d. Cir. 1999)).  "[T]he ALJ is not required to supply a comprehensive explanation

for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice."

*Cotter*, 650 F.2d at 482.  Absent such articulation, the Court "cannot tell if significant probative

evidence was not credited or simply ignored." *Id.* at 705.  As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the
> weight [s/]he has given to obviously probative exhibits, to say that [the] decision is
> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can

enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings.  *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984).  Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).  A decision to "award

benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B.    Standard for Awarding Benefits**

Under the Social Security Act, an adult claimant (i.e., a person over the age of eighteen) is disabled and eligible for Social Security disability benefits based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. § 404.1505(a).[4] An impairment is "medically determinable" if it results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic

---

[4] Disability Insurance Benefits (*see* 42 U.S.C. §§ 401, et seq.) and Supplemental Security Income (*see* 42 U.S.C. §§ 1381, et seq.) are separate programs under Title II and Title XVI, respectively, of the Social Security Act. Although they are subject to different qualification requirements, the standard for determining whether a claimant is disabled is the same for both programs. *See Rutherford v. Barnhart*, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). The Court endeavors to provide citations to the applicable regulations for each program but may provide citations only to the disability insurance benefits regulations. *See Carmon v. Barnhart*, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

techniques. Thus, an impairment can be established by objective medical evidence from an acceptable medical source, but cannot be established by a statement of symptoms, a diagnosis, or a medical opinion. *Id*. § 404.1521.

The process for determining an adult's claim for Social Security disability benefits involves a five-step sequential inquiry. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a).[5] The claimant bears the burden of proof at Steps One through Four. At Step Five, the burden shifts to the Commissioner. *Id*. §§ 404.1512, 416.912; *see Holley v. Colvin*, 975 F. Supp.2d 467, 476-77 (D.N.J. 2013), *aff'd sub nom. Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167 (3d Cir. 2014). At each Step, the ALJ must consider the combined effect of all the claimant's physical and mental impairments without regard to whether any single impairment, if considered separately, would be of sufficient severity to proceed to the next Step. 20 C.F.R. §§ 404.1523(c), 416.923(c).

At Step One, the ALJ decides whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is work activity that involves doing significant physical or mental activities and is usually done for pay or profit. *Id*. §§ 404.1572(a) & (b), 416.972(a) & (b). If the claimant is engaging in such activity, then the inquiry ends because the claimant is not disabled.

"The [Step Two] inquiry is a de minimis screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). At this Step, the ALJ decides whether the claimant has a medically determinable impairment or a combination of such impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is severe if it significantly limits a claimant's ability to perform basic work

---

[5] This case arises from a claim filed before March 27, 2017 and is therefore analyzed by this Court – as it was by the ALJ – under 20 C.F.R. § 404.1527.

activities. An impairment or combination of impairments is not severe if the claimant has a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. *Id*. §§ 404.1522, 416.922. If the claimant does not have a severe impairment or combination of impairments, then the inquiry ends because the claimant is not disabled.

At Step Three, the ALJ decides whether the claimant's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's specific impairment is not listed, the ALJ will consider the most closely analogous listed impairment for purposes of deciding medical equivalence. *Id*. §§ 404.1526(b)(2), 416.926(b)(2). If the claimant has an impairment or combination of impairments that meets or medically equals a Listing, then the claimant is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. §§ 404.1509, 416.909.

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC"), determine the physical and mental demands of the claimant's past relevant work, and determine whether claimant has the level of capability needed to perform past relevant work. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). RFC is the claimant's maximum remaining ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. Past relevant work is work performed (either as the claimant actually performed it or as it is generally performed in the national economy) either within the last 15 years or within 15 years prior to the disability date. In addition, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *Id*. §§ 404.1560, 404.1565,

416.945, 416.960.  If the claimant's RFC enables her/him to perform past relevant work, then the claimant is not disabled.

At Step Five, the ALJ must decide whether the claimant, considering her/his RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If the claimant is incapable of doing so, then s/he is presumed to be disabled if her/his impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

In deciding the claimant's ability to perform other jobs that exist in significant numbers in the national economy, the ALJ must consider whether the claimant's impairment and symptoms result in exertional and/or non-exertional limitations.  The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertion levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling.  *Id.* §§ 404.1569a(a) & (b), 416.969a(b).  Non-exertional limitations affect a claimant's ability to meet all other demands of a job (i.e., non-strength demands), including but not limited to difficulty performing postural or manipulative functions such as reaching, stooping, climbing, crawling, crouching, handling, or fingering; difficulty tolerating environmental or physical features of certain work settings such as dust or fumes; or difficulty maintaining concentration or understanding detailed instructions.  *Id.* at §§ 404.1569a(c), 416.969a(c).

If the claimant has no non-exertional limitations and can perform all or substantially all exertion demands at a given level, then the ALJ must use the Medical-Vocational Rules (also referred to as "Grid Rules") found at 20 C.F.R. § 404, Subpart P, Appendix 2.  20 C.F.R. §§ 404.1569a(b), 416.969a(b).  The Grid Rules reflect various combinations of RFC, age,

education, and work experience, and direct a finding of disabled or not disabled for each combination.   If the claimant also has any non-exertional limitations or cannot perform substantially all the exertional demands at a given level, then the Grid Rules are used as a framework for decision-making unless there is a rule that directs a conclusion of disabled without considering the additional non-exertional or exertional limitations.   *Id*. §§ 404.1569a(d), 416.969a(d).   If the claimant has solely non-exertional limitations, then the Grid Rules provide a framework for decision-making.  *Id*. §§ 404.1569a(c), 416.969a(c).

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 46 years old on November 30, 2012, her alleged onset date, and her date last insured was June 30, 2017.  (R. 28, 33.)  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (R. 28.)  At Step Two, the ALJ found that Plaintiff had the following severe impairments:  cervical and lumbar degenerative disc disease, and obesity.  The ALJ also found at Step Two that Plaintiff had the following impairments which were not severe:   rheumatoid arthritis, plantar fasciitis, headaches, possible carpal tunnel syndrome, and an unspecified hand disorder.  (R. 28.)  At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any Listing.  (R. 29.)   At Step Four, the ALJ found that Plaintiff had the residual functional capacity to perform light work subject to various non-exertional limitations.  (R. 29-30.)  The ALJ also found at Step Four that Plaintiff was able to perform her past relevant work as an order-checker and a housekeeping cleaner.  (R. 30.)  At Step Five, the ALJ alternatively found that a finding of not disabled would be directed by Grid Rule 202.21 if Plaintiff had the RFC to perform the full range of light work.  The ALJ also found at Step Five that at least 3 jobs – laundry sorter, photocopy operator, and collator – existed in significant numbers in the national economy

and could be performed by an individual with Plaintiff's age, education, work experience, and RFC.  (R. 34.)  The ALJ concluded that Plaintiff was not disabled from November 30, 2012 through February 26, 2016 (decision date).  (R. 34.)

Plaintiff attacks the ALJ's decision on several fronts.  Specifically, Plaintiff contends that: (1) the decision did not adequately address Plaintiff's obesity; (2) the decision did not properly evaluate Plaintiff's subjective symptoms; (3) the RFC finding lacked evidentiary support and did not include all of Plaintiff's credibly established limitations; (4) the past relevant work finding was not supported by substantial evidence; and (5) the Commissioner did not meet her burden in proving that Plaintiff can perform other work.  Plaintiff asks the Court to reverse and remand for payment or, alternatively, for a new hearing.[6]  Defendant contends that the ALJ's decision should be affirmed in its entirety because it correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence.

## IV.    SUMMARY OF RELEVANT EVIDENCE

### A.    Plaintiff's Testimony.

In February 2016, Plaintiff was questioned during the hearing by her counsel and the ALJ.[7] (R. 30, 43-68.)  She testified that, while working in a seasonal maintenance job during 2012, she was involved in a low-speed car accident in November 2012.  She was  instructed by her physicians to stay home from work for two weeks, and she was able to return to work for one week before

---

[6] The "Opening Statement" and "Summary of Argument" sections of Plaintiff's brief request that the Court reverse the ALJ's denial of benefits and remand for payment (ECF No. 12 at 1, 9), but this is merely boilerplate.  Plaintiff repeatedly requests throughout the remainder of her brief that the Court remand for a new hearing.  *See id.* at 11, 17, 27, 32, 37.

[7] In December 2013, Plaintiff submitted a Function Report (R. 256-63) that was consistent with her February 2016 hearing testimony.

she was laid off at the end of the season. Plaintiff immediately applied for unemployment benefits, which she continued to receive until January 2014. Although Plaintiff certified for purposes of collecting unemployment benefits that she was ready, able, and willing to work through January 2014, Plaintiff has not tried to find any work since November 2012.

Plaintiff testified that she was unable to work because of illnesses – "my arm, my back and neck and the headaches, dizziness." She was prescribed bilateral braces at the end of 2015 for carpal tunnel syndrome or nerve damage in her arms and hands. She had facet joint injections for a herniated disc but was not advised that she required surgery. She also attended physical therapy "quite a few times." She was told that her headaches were caused by her cervical spine issues. She had a headache three times per week, with each one lasting about twenty minutes. She experienced dizziness in the morning. She used an orthotic insert in her shoe that helped her heel, but her toe would "still act up every now and again." Her primary care physician was Dr. Saleem Mahmood, whom she saw monthly to review her prescriptions. She saw Dr. Tikoo, her neurologist, monthly to evaluate her pain and prescriptions. She saw Dr. Maiello, her rheumatologist, every three months to review her lab tests and prescriptions. Her medications were: Strovite (vitamin deficiency); Losartan potassium (blood pressure); Omeprazole (gastro-intestinal); Leflunomide (rheumatoid arthritis); Diclofenac potassium (anti-inflammatory); and a Lidocaine cream (pain). In response to questions from the ALJ, Plaintiff's counsel represented that Plaintiff's EMG studies were "essentially electrically normal" and that there were no positive rheumatoid lab test results in the record.

Plaintiff further testified that she lived with her husband and their 23-year old son, who both receive disability benefits. She drove two to three times a week to the doctor or to Shoprite. In a typical day she would get up, drink some coffee, sit in a chair, watch the news, make the bed,

take a shower, take medicine, and watch television. She sometimes would sweep the floor, wash dishes, and fold laundry, taking breaks as needed. She enjoyed playing with her Nintendo DS, but had to take frequent breaks because of neck pain. Her husband helped with laundry, housework, and shopping. He also did most of the cooking; Plaintiff cooked four or five times a month. She could walk for about 20-30 minutes at a time up to 90 minutes total in an 8-hour day. She could stand for about 45-60 minutes at a time up to 120 minutes total in an 8-hour day. Although she had never tried, she thought she could sit for about 45-60 minutes at a time up to 120 minutes total in an 8-hour day. She reclined for 30-35 minutes every day. She could lift a gallon of milk but not very high, and sometimes she had difficulty opening jars. She needed to use both hands to hold a cup. Her right arm bothered her when she put on a shirt. When she bent at the waist, she experienced back pain. She had difficulty turning her head left and right, and looking down.

The Court discusses in Section V.E. below the relevant testimony provided by both Plaintiff and the VE regarding Plaintiff's previous employment.

### B.    Medical Evidence.

The medical evidence before the ALJ included:

- Records from Plaintiff's primary care physicians: Dr. Frank Rotella from December 2012 to August 2013 (R. 306-13, 332-71, 493-511); Dr. Muhammad Ahman from April to July 2014 (R. 579-80, 685-97); Dr. Saleem Mahmood from August 2014 to January 2016 (R. 550-78, 734-841).

- Records from Plaintiff's specialist physicians: Dr. Dominic Maiello (rheumatology) from October to November 2011, and August to December 2015 (R. 698-727); Dr. Vijay Dasika (neurology) from November 2012 to February 2013 (R. 314-331); Dr. Solomon Halioua (pain management) from January to September 2013 (R. 377-97, 512-26); Dr. Joel Lerner (podiatry) from August 2014 to December 2015 (R. 527-31, 678-84, 728-33, 747-48, 755-56); Dr. Ravinder Tikoo (neurology) from December 2014 to August 2015 (R. 532-34, 778-83, 831-33).

- Medical imaging reports: October 2011 X-rays of bilateral knees, elbows, hands, and wrists (R. 706-12); January 2013 MRIs of lumbosacral and cervical spines (R. 477-78); February 2013 EMG & NCV right upper and right lower extremities studies (R. 485-92); December 2014 EMG & NCV upper extremities studies (R.

545-49); January 2015 Transcranial Doppler (R. 540-44); and January 2015 EMG & NCV lower extremities studies (R. 536-39).

- State Agency reviewing consultants' January 2014 opinion that Plaintiff could perform medium work and, in an 8-hour workday, could:  frequently lift/carry up to 25 pounds; occasionally lift/carry up to 50 pounds; stand/walk (with normal breaks) for 6 hours; and sit (with normal breaks) for more than 6 hours on a sustained basis.  (R. 86-93.)   In March 2014, this opinion was affirmed on reconsideration.  (R. 95-102.)

The ALJ's decision contained a comprehensive discussion of the medical evidence.  (R. 28-32.) Accordingly, the Court discusses in Section V. below the specific medical evidence relevant to the issues on appeal.

## V.   DISCUSSION

### A.   Scope.

Plaintiff directly submitted to the Appeals Council medical evidence that both pre-dated and post-dated the ALJ's February 26, 2016 decision.  The Appeals Council found that the following evidence did not show a reasonable probability that it would change the outcome of the decision:  Dr. Rotella's treatment records from February 1, 2014 (R. 84-85); LabCorp records from August 27, 2015 (R. 80-83); Dr. Tikoo's treatment records from February 9, 2016 (R. 77-79); and Dr. Mahmood's treatment records from February 24, 2016 (R. 22).  (R. 2.)  The Appeals Council also found that the following evidence did not relate to the period at issue and did not affect the decision:  Dr. Tikoo's treatment records from March 30 to April 21, 2016 (R. 13-17); Dr. Mahmood's treatment records from April 6, 2016 (R. 18-20); and Christ Hospital Radiology records from April 27, 2016 (R. 12).  (R. 2.)

"No statutory provision authorizes the district court to make a decision on the substantial evidence standard based on new and material evidence never presented to the ALJ."  *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001).  "The correctness of [the ALJ's] decision depends on the evidence that was before [her/]him.  [S/h]e cannot be faulted for having failed to weigh evidence

never presented to [her/]him." *Id.* at 592; *see Miller v. Comm'r Soc. Sec.*, 732 F. App'x 162, 165 (3d Cir. 2018) ("[A] district court 'cannot look to evidence never presented to the ALJ in determining whether that decision was supported by substantial evidence[.]'") (quotation omitted). The Court therefore finds that it cannot consider when reviewing the ALJ's decision any of the above-listed evidence. The Court also finds that Plaintiff has waived any request for remand under Sentence Six of 42 U.S.C. § 405(g) as to this evidence. *See Miller*, 732 F. App'x at 164-65 (by failing to seek Sentence Six remand from district court, "[claimant] waived the opportunity for her benefits ruling to be reviewed in light of the new evidence").

### B. **Obesity.**

At Step Two, the ALJ found that obesity was one of Plaintiff's two severe impairments (the other being cervical and lumbar degenerative disc disease). Plaintiff argues that the ALJ committed reversible error at Step Three by failing to consider Plaintiff's obesity when analyzing the Listings. Plaintiff also argues that the ALJ committed reversible error at Step Four by failing to consider Plaintiff's obesity when crafting the RFC finding.

#### 1. **Step Three.**

Social Security Ruling 02-1p provides explicit instruction for considering obesity at Step Three. *See* S.S.R. 02-1p, *Titles II & XVI: Evaluation of Obesity*, 2002 WL 34686281 (S.S.A. Sep. 12, 2002)). The ALJ must determine whether the claimant's obesity by itself is *medically equivalent* to any Listing. For example, if the obesity results in an inability to ambulate effectively, it can substitute for the criteria of Listing 1.02A (Major Dysfunction of a Joint) – which requires a major dysfunction of one major peripheral weight-bearing joint that results in the inability to ambulate effectively. S.S.R. 02-1p, 2002 WL 34686281, at *5. The ALJ must also determine whether obesity, in combination with any of the claimant's other impairments, *meets* any Listing.

For example, obesity can satisfy the physical impairment criterion for Listing 12.05C (Intellectual Disability) – which requires both a specific IQ range and a physical or mental impairment that imposes an additional and significant work-related limitation of function. *Id*. The ALJ must further determine whether obesity, in combination with any of the claimant's other impairments, is *medically equivalent* to any Listing. For example, because obesity increases the resting workload of the cardiovascular and respiratory systems, the combination of a cardiovascular or respiratory impairment and obesity may have signs, symptoms, and laboratory findings that are of equal medical significance to Listings 4.00 et seq. (Cardiovascular System) or Listings 3.00 et seq. (Respiratory Disorders). *Id*.

At Step Three, the ALJ noted that while there are no Listing criteria "specific to the evaluation of obesity impairments, pursuant to S.S.R. 02-1(p) obesity was considered in determining whether the claimant's impairments met or equaled any [L]isting section." (R. 29.) Plaintiff argues that "[s]uch conclusory statements are not the meaningful review mandated by *Diaz*[,]" where the Third Circuit remanded for an ALJ's failure at Step Three to analyze "the cumulative impact of [claimant's] obesity and other impairments on her functional abilities." ECF No. 12 at 15-16 (citing *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009)). Pointing to the Third Circuit's dicta in *Diaz* that the result might have been different "were there *any* discussion" of obesity in the ALJ's decision in that case, Defendant argues that Diaz is distinguishable because the decision in this case references obesity at Steps Three and Four. ECF No. 13 at 14 (quoting *Diaz*, 577 F.3d at 504 (emphasis in original)). The Court need not resolve the parties' dispute in this regard.

Remand is warranted only if the ALJ's error was not harmless. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ("[A] remand is not required here because it would not affect the

outcome of the case."). Plaintiff bears the burden of explaining how a more detailed analysis of her obesity "would lead to the conclusion that [s]he was disabled at step three." *Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016) (claimant challenging Step Three finding must "explain[] how, even if the ALJ's analysis was lacking, the deficiency was harmful to [her/]his claims"); *see Gullace v. Colvin*, No. 15-cv-7630 (FLW), 2017 WL 714356, at *10 (D.N.J. Feb. 23, 2017) (claimant challenging Step Three finding must "'affirmatively point to specific evidence that demonstrates [s/]he should succeed'") (quoting *Woodson*). Plaintiff "has not even pointed to the Listing that she claims to have met or equaled" because of her obesity, "much less pointed to evidence of record that might have supported such a determination." *Bush v. Comm'r of Soc. Sec.*, No. 14-cv-208 (SRC), 2015 WL 3889543, at *2 (D.N.J. Jun. 24, 2015). The Court therefore finds that any error by the ALJ at Step Three as to Plaintiff's obesity was harmless. *See*, *e.g.*, *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (harmless error where claimant complained "in vague terms that certain impairments were not properly compared, separately and in combination, to the listings" without identifying "specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not").

### 2. Step Four.

Social Security Ruling 02-1p also provides explicit instruction for considering obesity at Step Four when assessing a claimant's RFC:

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.

An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.

S.S.R. 02-1p, 2002 WL 34686281, at *6.

Plaintiff argues:

While S.S.R. 02-1p absolutely requires consideration of obesity at the step 3 listing level and at the step 4/5 RFC discussion, the ALJ herself specifically advises that plaintiff's obesity was considered (only) "in determining whether the claimant's impairments met or equaled any listing section." The decision plainly acknowledges that no such consideration was undertaken at subsequent steps, most particularly, in the calculation of plaintiff's RFC. And indeed, a review of the plain text of the decision reveals that obesity is never discussed anywhere or at any point. … [T]he word "obesity" is mentioned only more time to advise us of plaintiff's height and weight [citing (R. 31)]. No evaluation or discussion is offered. No limitations or restrictions are assessed. No impact at all of plaintiff's obesity alone or in conjunction with plaintiff's acknowledged disc herniations in the lumbar spine or cervical disc disease is mentioned. Even the extent of plaintiff's obesity, a BMI of 39.1, goes unmentioned.

ECF No. 12 at 17. Plaintiff's description of this aspect of the ALJ's decision is breathtakingly inaccurate. As Plaintiff concedes, the ALJ stated that Plaintiff "has been diagnosed with obesity and Dr. Mahmoud wrote in a February 19, 2015 examination note that the claimant stood 5 feet, 3 inches and weighed 221 pounds." (R. 31.) The ALJ *also* stated: "Although the record indicates that the claimant is obese, there is no evidence in the record that it has significantly limited her physical functioning." (R. 32.) The ALJ *further* stated that little weight was ascribed to the State

Agency reviewing consultants' opinion that Plaintiff could perform medium work, because the record showed "that while the claimant's spinal condition and obesity were not debilitating they did somewhat limit her functioning such that her moderate range of motion limitations and pain would preclude her from lifting 50 pounds." (R. 32.) The Court therefore finds no error in the ALJ's consideration of Plaintiff's obesity when crafting the RFC finding.

Moreover, even if the ALJ had erred in this regard, the Court finds that any such error would be harmless. Plaintiff surmises without any supporting medical evidence that her functional capabilities are adversely affected by her obesity. *See*, *e.g.*, ECF No. 12 at 31 ("But the RFC has plaintiff standing and walking virtually the entire day, carrying a morbidly obese frame with pathologies in both feet cushioned only by ortho[t]ic insoles."). This unfounded assumption fails to meet her burden of demonstrating that greater consideration of Plaintiff's obesity inevitably would have led the ALJ to craft a more restrictive RFC finding. *See Woodson*, 661 F. App'x at 766 (harmless error where claimant "only says in very vague terms that an actual discussion of his impairments would lead to the conclusion that he was disabled"). Plaintiff points to no evidence that her obesity imposed additional limitations on her functional abilities. In fact, her medical records reflect a contrary conclusion; none of Plaintiff's treating physicians found that Plaintiff's obesity burdened her ability to perform activities, work or otherwise. As Judge Wolfson recently explained in rejecting a similar argument asserted by Plaintiff's counsel in a different case: "Because Plaintiff has merely offered a generalized response that his weight makes it harder for him to stand and walk, he has failed to meet his burden, and as such, this Court finds the ALJ's error to be harmless." *Gullace*, 2017 WL 714536, at *10 (citations omitted). The argument fares no better in this case.

C.    **Subjective Symptoms.**

"Credibility determinations as to a claimant's testimony, regarding pain and other subjective complaints are for the ALJ to make." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 765 (3d Cir. 2009) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *see Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (courts "ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor."); *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 286 (3d Cir. 2006) ("a reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness"). The ALJ is required to assess the credibility of a claimant's subjective complaints using a two-step process. *See* 20 C.F.R. § 404.1529. First, the ALJ must determine whether the record demonstrates that the claimant possesses a medically determinable impairment that could reasonably produce the alleged symptoms, including pain. Second, the ALJ must assess the credibility of the claimant's complaints regarding the intensity of the symptoms by determining if they are supported by objective medical evidence. If not, the ALJ must consider other factors, including: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken by claimant to alleviate the symptom s; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms, (6) any other measures other than treatment the individual uses or has used to relieve symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to symptoms. The ALJ's "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the

weight the adjudicator gave to the individual's statements and the reasons for that weight."  Social

Security Ruling 96-7p, *Titles II & XVI:  Evaluation of Symptoms in Disability Claims:  Assessing

the Credibility of an Individual's Statements*, 1996 WL 374186, at *4 (S.S.A. Jul. 2, 1996).[8]

After reciting the above two-step process, the ALJ summarized Plaintiff's testimony and

treatment history from January 2013, including citations to the treatment notes of Drs. Halioua,

Ahmad, Mahmood, Tikoo.  (R. 30-31.)  The ALJ found that although Plaintiff's medically

determinable impairments reasonably could be expected to cause her alleged symptoms, her

"statements concerning the intensity, persistence and limiting effects of these symptoms are not

entirely credible for the reasons explained in this decision."  (R. 31.)  The ALJ's finding was based

on treating physician notes that:

- During 2013, Plaintiff's pain levels decreased following epidural facet injections and physical therapy.

- During 2014 and 2015, Plaintiff experienced only intermittent spinal pain with no pain radiation.  Plaintiff stated that her pain improved with medication, and her physical therapist also repeatedly noted that Plaintiff's pain symptoms had decreased.  Physical examination findings during this period consistently reportedly no neurological deficits and full range of motion.

- By January 2016, Plaintiff conceded that she was able to work and could perform activities of daily living.

(R. 31-32.)

Plaintiff attacks the ALJ's decision for "assert[ing] that since the intensity of plaintiff's

symptoms had been managed through physical therapy and epidural nerve blocks, her pain is no

longer 'credible'."  ECF No. 12 at 21.  This argument is flawed in several respects.  First, Social

Security Ruling 96-7p instructs that, when assessing a claimant's subjective symptom, the ALJ

---

[8] Although Social Security Ruling 96-7p has been superseded, it still applies to decisions issued before March 28, 2016.  *See* Social Security Ruling 16-3p, *Titles II & XVI:  Evaluation of Symptoms in Disability Claims*, 2016 WL 1020935, at n.27 (S.S.A. Mar. 16, 2016).

should consider any non-medication treatment that the claimant receives or has received for relief of pain.  Second, as the ALJ's evidentiary summary reveals, Plaintiff's pain levels decreased substantially after her August 2013 injections; indeed, she stopped pain management treatment with Dr. Halioua by September 2013.  (R. 526.)  In April 2014, when Plaintiff switched her primary care physicians from Dr. Rotella to Dr. Ahmad, she was taking Flexeril.  (R. 686.)  By September 2014, when Plaintiff had switched primary care physicians again to Dr. Mahmood, she was no longer taking any pain medications.  (R. 570.)  Third, the ALJ did not find that Plaintiff's pain complaints were not credible.  To the contrary, the ALJ found that Plaintiff's pain complaints were sufficiently credible to "preclude her from lifting 50 pounds" against the opinion of the State Agency reviewing consultants.  (R. 32.)

Plaintiff also attacks the ALJ's decision for ascribing "little weight" to Dr. Rotella's May 5, 2013 report.  The ALJ explained that "in addition to being vague, [Dr. Rotella] fails to give a function by function assessment of the claimant's vocational capacity while the claimant's same day examination revealed that the claimant [had] moderate range of motion limitations and save for positive straight leg raising she was otherwise neurologically intact."  (R. 32 (citing R. 334-49).)  Plaintiff initially faults the ALJ for resting "a large part of the [] pain evaluation" on the rejection of Dr. Rotella's opinion.  ECF No. 12 at 22.  However, the ALJ's assessment of Plaintiff's subjective symptoms rested – as described above and in the decision – on *all* the medical evidence from 2013 through 2016, and on Plaintiff's admitted ability to work and perform activities of daily living.  Plaintiff next argues that "the rejection of this treating opinion can correctly be interpreted as a conclusory elimination of a treating source whose report was deemed inconvenient."  ECF No. 12 at 23-24.  The Court disagrees.

When evaluating medical evidence, an ALJ must give controlling weight to, and adopt the medical opinion of, a treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). "[A]n ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317. However, the treating physician rule applies only to opinions that reflect judgments about the nature and severity of a claimant's impairment, including the claimant's symptoms, diagnosis and prognosis, what s/he can still do despite the impairment, and his/her physical or mental restrictions. 20 C.F.R. § 404.1527(a). A treating physician "opinion" that the claimant is disabled and unable to work can never be given controlling weight, because that is an administrative finding reserved to the Commissioner. 20 C.F.R. § 404.1527(d).

Dr. Rotella's report explains that he initially evaluated Plaintiff on December 6, 2012, approximately one week after her car accident. His physical examination findings at that time were normal except for labored gait and altered posture; bilateral tenderness, spasm, and limited range of motion in cervical, dorsal, and lumbar spines; positive bilateral straight leg raising; and positive maximum cervical compression test. In January 2013, he sent Plaintiff for MRIs of her cervical and lumbar spines, which revealed: posterolateral lumbar disc herniation at L4-L5 and L5-S1 with thecal sac indentation; cervical disc herniation at C2-C3; and cervical disc bulges at C5-C6. In February 2013, he sent Plaintiff to Dr. Dasika for a neurological evaluation, who reported that EMG and nerve conduction velocity studies in the right upper and lower extremities and related paraspinals were normal. Dr. Rotella diagnosed Plaintiff with the cervical and lumbar disc herniations; cervical and lumbar strain and sprain with radiculitis; dorsal myofascitis; muscle

23

contraction headaches; and anxiety post motor vehicle accident. (R. 334-36.) He prescribed Flexeril and Motrin, referred Plaintiff to physical therapy, and administered a set of eight trigger point injections to Plaintiff's bilateral trapezius and rhomboid musculature on both February 26 and March 5, 2013. In April 2013, Dr. Rotella referred Plaintiff to Dr. Halioua for pain management. Dr. Halioua recommended lumbar epidural facet injections. Dr. Rotella last examined Plaintiff on May 15, 2013 – the date of his report. His description of Plaintiff's subjective complaints on that day is almost identical to his description from December 6, 2012. Physical examination findings were also the same as December 6, except that Plaintiff had greater spinal range of motion on May 15. (R. 336-37.) Dr. Rotella's "prognosis" included the following:

- "The patient has had significant pain, significant restriction of movement of the cervical, dorsal and lumbar spines, as well as significant impairment of function of the musculoskeletal system."

- "The patient was unable to perform a substantial portion of material acts, which constitute her usual customary activities through the entire course of therapy, as a result of the impairment imposed by her injuries."

- "The formation of scar tissue causes permanent limitation of normal range of motion, which was evident on her last examination of 05/15/2013. These significant limitations will have a direct impact on the lifestyle of both domestic and work-related responsibilities."

- "Taking into consideration the persistence of the patient's subjective complaints subsequent to a course of therapy and the objective residua present at the time of her last examination on 05/15/2013, it is my medical opinion that the patient's injuries are chronic and permanent and will cause significant impairment of function of the whole person."

- "[I]t is my medical opinion that the injured areas will not heal to function normally resulting in a chronic and permanent condition."

- "It is my further opinion that within a reasonable degree of medical probability that although further treatment in the future may alleviate some symptomatology, the permanent residuals of the injury cannot be completely resolved by way of further medical treatment intervention and there will always be some aspect of residual permanent injury experienced for the balance of her lifetime. She has sustained permanent injuries that will have permanent residual sequelae."

(R. 337-38.)

The Court finds no error in the ALJ's assessment of Dr. Rotella's report, for which "vague" is a charitable description. If Dr. Rotella intended to opine that Plaintiff were permanently unable to perform any work activities, his opinion cannot be controlling because that decision is exclusively for the ALJ. If Dr. Rotella instead intended to opine that Plaintiff were limited as to certain functional abilities, his effort falls far short of the mark because the reader is left guessing about the scope of Plaintiff's limitations and what she still can do despite her impairments. Plaintiff asserts that "the entirety of the report stands for the un-arguable reality of the plaintiff's pain and limitation of motion." ECF No. 12 at 23. However real Plaintiff's pain and limitation of motion appeared to Dr. Rotella at the time, it did not prevent Plaintiff from collecting unemployment benefits during the first three quarters of 2013 after representing to the government that she was ready, able, and willing to work. (R. 215.) Nor did it prevent Plaintiff from completing a Function Report in December 2013 that detailed her ability to perform many activities of daily living. The Court appreciates Dr. Rotella's certainty that Plaintiff's pain levels and limitation of motion would always remain at the same levels (accompanied by their unspecified impact on Plaintiff's functional abilities) as in May 2013. But Dr. Rotella's opinion does not trump the subsequent medical evidence cited by the ALJ from 2013, 2014, and 2015 that revealed decreased pain levels and improved range of motion. Indeed, in January 2016, Plaintiff told her doctors what she had told the government three years earlier: namely, that she was able to work.[9]

---

[9] Finally, Plaintiff asserts in a footnote that "[t]he ALJ was fully authorized, if not compelled, to find plaintiff disabled during the closed-period between alleged onset in late 2012 and alleged medical improvement in early 2016." ECF No. 12 at n.5. Social Security disability benefits may be awarded for a "closed period" if a once-disabling condition lasting for at least 12 months ceases to be disabling. 20 C.F.R.

The Court therefore finds that substantial evidence supported the ALJ's assessment of Plaintiff's subjective symptoms.

### D.    RFC Finding.

At Step Four the ALJ found that Plaintiff had the RFC to perform light work:

> [S]he is able to lift and carry ten pounds frequently and twenty pounds occasionally; she is able to sit for about six hours of an eight hour workday; she is able to stand and/or walk for about six hours of an eight hour workday; she is precluded from working around hazards (heights, machinery, dangerous equipment, and so forth); she is precluded from climbing ladders, ropes, and scaffolds; and she is limited to occasional balancing, stooping, kneeling, crouching, and crawling.

(R. 29-30 (citing 20 C.F.R. § 404.1567(b).  Relying on *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981), Plaintiff contends the ALJ's RFC finding for lacking evidentiary support and failing to include all credibly established limitations.  *See* ECF No. 12 at 27-30.  This criticism is unfounded, because the ALJ's evidentiary analysis spanned three pages and considered medical imaging reports and laboratory tests, treatment notes, and Plaintiff's testimony.  Plaintiff specifically complains that the decision did not explain why the combination of Plaintiff's severe and non-severe impairments  "would not have rendered her incapable of sustaining work activity without significant regression or at least a significant off-task allowance."  (R. 30-31.)  The Court has already found that any error in this regard as to Plaintiff's obesity was harmless.  As to Plaintiff's remaining impairments, the ALJ cannot be faulted for failing to discuss what does not exist.  None of Plaintiff's eight treating physicians opined that Plaintiff had any specific functional limitation. In contrast, the State Agency reviewing consultants – who are "experts" in social security disability

§ 404.1509.  The Court finds that Plaintiff has waived this argument, which was not presented to the ALJ or the Appeals Council and was presented to this Court with no supporting substantive analysis.  Moreover, the Court finds – for all the reasons explained in this decision – that substantial evidence would not support a finding that Plaintiff was disabled for the period between November 30, 2012 and January 24, 2016, but was not disabled between January 25 and February 26, 2016.

evaluations (*see* 20 C.F.R. §§ 404.1527(e)(2)(i), 404.1527(f)) – opined that Plaintiff was subject to a *less restrictive* RFC than the ALJ found was supported by the evidentiary analysis.  Setting aside the lay opinion of Plaintiff's counsel, Plaintiff points to no evidence overlooked by the ALJ whose consideration inevitably would have led to a more restrictive RFC finding.  *See Woodson*, 661 F. App'x at 766 (harmless error where claimant "only says in very vague terms that an actual discussion of his impairments would lead to the conclusion that he was disabled").  The Court therefore finds no error in the RFC finding and, alternatively, that any error was harmless.

### E.    Past Relevant Work.

After crafting the RFC finding at Step Four, the ALJ made the following past relevant finding:

> The vocational expert testified that a hypothetical individual with the above residual functional capacity can return to the claimant's past work as an [o]rder-[c]hecker (DOT Code 222.687-020, light, SVP of 4) as actually and generally performed and as a [h]ousekeeping [c]leaner (DOT Code 323.687-014, light, SVP of 2) as generally performed.
>
> As per S.S.R. 82-62, the residual functional capacity to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of "not disabled."
>
> In comparing the claimant's residual functional capacity for a range of light work with the physical demands of these types of work, the undersigned finds that the claimant is able to perform her order-checker job as generally and actually performed, and she is able to perform the housekeeping cleaner job as generally performed.

(R. 32-33 (citing Social Security Ruling 00-4p, *Titles II & XVI: Use of Vocational Expert And Vocational Specialist Evidence, And Other Reliable Occupational Information In Disability Decisions*, 2000 WL 1898704 (S.S.A. Dec. 4, 2000)).)  Plaintiff contends that this finding was not supported by substantial evidence because the ALJ failed to explain both why these jobs

constituted substantial gainful activity and why Plaintiff was able to perform them. The Court disagrees.

A claimant's work experience is considered relevant "when it was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). Plaintiff argues that the ALJ's decision "does not explain why either of plaintiff's past jobs were considered substantial gainful activity in view of plaintiff's earnings."[10] Plaintiff testified that she was an order-checker for Jetro Holdings in 2001. (R. 50.) According to a Detailed Earnings Query, she reported total earnings of $13,947 for this work in 2001 (R. 221), when the Commissioner's presumptive substantial gainful activity amount was $8,880.[11] Plaintiff also testified that she was self-employed as a housekeeper in 2003. (R. 51.) According to a Detailed Earnings Query, Plaintiff reported total earnings of $6,441 for this work in 2003 (R. 221), when the Commissioner's presumptive substantial gainful activity amount was $9,600. The Court therefore finds that the ALJ erred in finding that Plaintiff's job as a housekeeper constituted substantial gainful activity. However, such error was harmless because the Court also finds that substantial evidence supports the ALJ's finding that Plaintiff's job as an order-checker constituted substantial gainful activity.

Social Security Ruling 82-62 provides in relevant part:

> The rationale for a disability decision must be written so that a clear picture of the case can be obtained. The rationale must follow an orderly pattern and show clearly how specific evidence leads to the conclusion that a claimant can meet the physical and mental demands of a past relevant occupation.

---

[10] Inexplicably, Plaintiff's brief compares her reported earnings and the Commissioner's presumptive substantial gainful activity amounts only for the years 2007 through 2013 (ECF No. 12 at 35) – when Plaintiff was no longer working as an order-checker or a housekeeper (R. 222-23).

[11] The Commissioner's presumptive earnings thresholds for substantial gainful activity are found at: https://www.ssa.gov/)ACT/COLA/sga.html (last visited Apr. 17, 2019).

S.S.R. 82-62, 1982 WL 31386, at *3 ("If more than one job was performed during the 15-year period, separate descriptions of each job will be secured.").  Plaintiff's brief quotes liberally from S.S.R. 82-62 (*see* ECF No. 12 at 32-34) and argues that the ALJ erred by finding Plaintiff capable of performing the order-checker and housekeeper jobs based solely on the VE's testimony that those jobs are light work.  Defendant's brief does not address Social Security Ruling 82-62.  The ALJ's decision does not include any reference to – let alone a description of – Plaintiff's testimony about her past jobs.  Nor does the decision articulate the basis for the ALJ's findings other than wholesale adoption of unspecified VE testimony.  As a result, the Court cannot meaningfully review the ALJ's decision in this regard.  *Compare Cox v. Comm'r of Soc. Sec.*, No. 09-3810 (WJM), 2011 WL 888377, at *4-5 (D.N.J. Mar. 14, 2011) (rejecting argument that ALJ did not comply with S.S.R. 82-62 where ALJ "specifically relied on [claimant's] own testimony and work history reports in determining the demands of her past relevant work"); *Figueroa v. Astrue*, No. 09-cv-232 (JLL), 2009 WL 5206284, at *6 (D.N.J. Dec. 22, 2009) (rejecting argument that ALJ did not comply with S.S.R. 82-62 where ALJ's decision "includes an appraisal of the Plaintiff's testimony" as to each separate past relevant job).  However, the Court finds that the ALJ's error was harmless because substantial evidence supports the ALJ's alternative finding at Step Five that Plaintiff is not disabled.

### F. Step Five.

At Step Five, the ALJ alternatively found that Plaintiff was not disabled based on the VE's testimony that a hypothetical individual of Plaintiff's age, education, and work experience – who was subject to the decisional RFC finding – could make a successful adjustment to other work that exists in significant numbers in the national economy.  (R. 34.)  Plaintiff argues that "the RFC for light work and with no off-task allowances for pain, obesity or a limitation of spinal motion cannot

serve as the basis for VE testimony sufficient to carry the Commissioner's step 5 burden."  ECF No. 12 at 26.  This argument simply restates Plaintiff's contention that the ALJ erred in crafting the RFC finding at Step Four – where the burden of proof rests with Plaintiff.  *See McGee v. Comm'r of Soc. Sec.*, No. 08-cv-594 (FLW), 2014 WL 2618541, at *9 (D.N.J. Jun. 12, 2014) (citing *Wallace*, 722 F.2d at 1153).  Having already found that the RFC finding was supported by substantial evidence, the Court rejects Plaintiff's remaining arguments.  *See Rutherford*, 399 F.3d at 554 n.8.

G.    **Local Rule 9.1(e).**

The Local Rules for this District require that a plaintiff's brief in a Social Security disability appeal include a separate "statement of facts with reference to the administrative record."  L. Civ. R. 9.1(e)(5)(C).  Plaintiff's 37-page brief contains a one-paragraph section entitled "Procedural History/Statement of Facts" that contains a brief procedural history of Plaintiff's administrative claim but no statement of facts whatsoever.  ECF No. 12 at 1-2; *see id*. at 3-37 (containing few, if any, record citations other than the ALJ's decision).  Moreover, Plaintiff's brief fails to comply in other respects with Local Civil Rule 9.1(e)(5).  For example, there is no meaningful "statement of the issues presented for review."  L. Civ. R. 9.1(e)(5)(A); *see* ECF No. 12 at 2 (one-sentence section entitled "Issue" stating only that "[t]he primary determination for this Court is whether the Commissioner's decision is supported by substantial evidence").

Since May 4, 2018, the undersigned has decided twenty-one Social Security disability appeals in which the plaintiff was represented by Plaintiff's counsel in the present case.  The plaintiff's brief in each of those cases has had similar failings.  It is not the Court's burden to sift through Plaintiff's unnecessarily caustic arguments to determine the bases for appeal and then comb through the record searching for support.  Plaintiff's counsel, the law firm of Langton &

Alter, Esqs., is specifically placed on notice that any brief that is filed after the date of this opinion and that does not comply with Local Civil Rule 9.1(e) will be rejected, and any re-briefing time for such a brief, will not be credited when considering reasonable fees for successful appeals. The Court will analyze the effect, if any, that Plaintiff's counsel's failure to comply with Local Civil Rule 9.1(e) (and the corresponding burden placed on the Court) should have on any award of attorney's fees in this case.

## V.    CONCLUSION

For these reasons, the Court affirms the Commissioner's decision that Plaintiff was not disabled as set forth in the accompanying Order.


Dated:   May 13, 2019                          _____s/ Paul A. Zoss_____
At Newark, New Jersey                          PAUL A. ZOSS, U.S.M.J.